# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

REBECCA FLEETWOOD,

        Plaintiff,

    vs.                       **Case No. 10-2480-RDR**

ROGER WERHOLTZ, Secretary
of Corrections, et al.,

        Defendants.

_____

## MEMORANDUM AND ORDER

This action is brought pursuant to 42 U.S.C. § 1983. It arises from alleged improper actions by a former Topeka Correctional Facility officer, defendant Nathan Van Dyke, against plaintiff while she was an inmate at the facility. In addition to defendant Van Dyke, plaintiff has sued ten other employees of the Kansas State Department of Corrections. This case is before the court upon a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) and for summary judgment pursuant to FED.R.CIV.P. 56. The motion is filed on behalf of all the defendants except defendant Van Dyke. Doc. No. 9.

## I. FIRST AMENDED COMPLAINT

This matter is proceeding upon a first amended complaint. In this document, plaintiff alleges that her constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution were violated by acts and omissions of the defendants in this case. Doc. No. 7 at ¶ 2. The defendants in

this matter, aside from Van Dyke, are identified as: Roger Werholtz, Secretary of Corrections; Richard Koerner, Warden Topeka Correctional Facility (TCF); William Cummings, Deputy Warden TCF; Major Joseph Essman, Shift Supervisor TCF; Capt. Mark Robertson; Lt. Tammy Shoulders; 1st Sgt. James Johnstone; 1st Sgt. Ross Plummer; 1st Sgt. Pat Roberts; and Keven Pellant, the Acting Secretary of Corrections and the Acting Warden of TCF, who is sued only in her official capacity. These are the movants in the motion before the court, and they are sometimes referred to as "supervisory defendants" for the purposes of this matter.

Plaintiff seeks compensatory and punitive damages from all the defendants except defendant Pellant. Plaintiff seeks only prospective relief as to defendant Pellant.

The first amended complaint alleges that sometime in September 2008 at about 6:00 a.m. defendant Van Dyke offered plaintiff a ride to her worksite off the campus of TCF and during the ride asked plaintiff for oral sex and grabbed her breasts. The complaint further alleges that on the same day Van Dyke picked plaintiff up from her worksite at about 2:45 p.m., drove to a nearby cemetery and again told plaintiff that he wanted oral sex. According to the complaint, plaintiff felt she could have "severe problems" if she did not comply with the request. Id. at ¶ 18. So, she engaged in sexual contact with Van Dyke which the complaint describes as "unwanted, unwelcome, and forced upon her." Id.

2

The complaint alleges that defendants Werholtz, Koerner, Cummings, Essman, Robertson, Shoulders, Johnstone, Plummer, Roberts and Van Dyke "personally participated in the creation and allowance of a culture of sexual misconduct at the TCF . . ." and in doing so "were deliberately indifferent to plaintiff and the other female prisoners" at TCF.    Id. at ¶ 15.

The complaint further alleges that "defendants' actions and omissions . . . caused and allowed the development . . . of a culture which included:

    allowing and tolerating sexual contact between TCF employees and female prisoners,

    failing to investigate instances of sexual misconduct,

    failing to hire appropriate personnel for the purpose of working with the female inmates,

    failing to discipline for sexual misconduct,

    failing to terminate for sexual misconduct,

    failing to train in regard to sexual misconduct, and

    failing to implement policies and procedures to protect inmates from sexually predatory correctional officers.

Id. at ¶ 19.

The complaint also states that defendants were responsible for "all of the following things at the Topeka Correctional Facility where plaintiff was incarcerated:

    multiple investigations related to allegations of sexual misconduct,

    multiple investigations ended with findings of 'unsubstantiated',

3

few employees dismissed even when allegations were
substantiated,

several employees investigated multiple times for undue
familiarity,

sexual misconduct and trafficking in contraband,

inappropriate contact with a female inmate who became
pregnant,

'red flags' which facility officials should have
recognized and acted upon so as to prevent further
problems."

Id. at ¶ 20.

The complaint asserts that these actions and omissions "caused
or contributed to cause the events described herein and the damages
to plaintiff." Id.

The complaint also alleges that the defendants Werholtz,
Koerner, Cummings, Essman, Robertson, Shoulders, Johnstone,
Plummer, Roberts and Van Dyke "had active, but varying roles in the
following factual situations which have been revealed by the Kansas
Legislative Post Audit and which were known generally to plaintiff
and other inmates:

[t]he creation and allowance of conditions that were ripe
for staff misconduct to have occurred between Topeka
Correctional Facility staff and female prisoners without
being detected and without corrective action being taken;

[t]he absence of any monitoring when inmates and staff
were moving around together including the monitoring of
which inmates were going with which staff persons, where
they were going, or how long they would be gone;

[m]ultiple disciplinary actions against staff members for
undue familiarity but without termination or appropriate
discipline;

[m]ale staff having female inmates in their vehicles without supervision;

[l]ack of accountability for staff as to their whereabouts and assignments;

[t]he continuation of inmates and staff moving around the facility without appropriate supervision or accountability;

[f]ailure to convene Serious Incident Review Boards when appropriate and needed;

[i]nconsistent and lenient responses to staff misconduct situations, especially in cases of undue familiarity;

[u]nder-reporting or non-reporting of staff misconduct;

[f]ailure to make appropriate findings of 'substantiated' rather than 'unfounded' during sexual misconduct investigations;

[f]ar fewer substantiated cases resulting in an employee's termination or resignation at the Topeka Correctional Facility (when compared with other Kansas correctional facilities);

[r]eduction of proposed or imposed punishment for employees against whom complaints were substantiated;

[f]ailure to provide targeted training based upon the population served at the Topeka Correctional Facility;

[t]he absence of specific training requirements for investigative staff;

[t]he failure to forward reports of misconduct to the central office;

[f]ailures to follow or enforce what policies did exist;

[l]ight or non-existent penalties for staff sexual misconduct;

[f]ailure to collect and provide sufficient management information to ensure that officials are aware of the level of staff misconduct."

<u>Id</u>. at ¶ 22.

The complaint contends that this information supports plaintiff's allegation that these defendants "acted with deliberate indifference and with reckless degrees of culpability to promulgate, create, implement, and/or otherwise possess responsibility for the continued practices, procedures, policies, patterns, decisions, instructions, orders and customs which created and allowed the culture of sexual misconduct at the Topeka Correctional Facility." <u>Id</u>. Plaintiff further alleges that this "culture of sexual misconduct" represented "the official policy" of TCF and its staff and this "directly caused or directly contributed" to plaintiff's damages. <u>Id</u>.

The complaint alleges that there were "affirmative links between the actions and omissions of all the defendants except defendant Pellant and the actions and omissions of defendant Van Dyke" and that all those defendants except defendant Pellant "personally participated in and/or acquiesced in the constitutional deprivations . . . and/or demonstrated deliberate indifference in their exercise of control or direction and/or demonstrated deliberate indifference in their failure to supervise." <u>Id</u>. at ¶ 23. Plaintiff further alleges that defendants' actions and omissions demonstrated "deliberate indifference to the safety and welfare" of plaintiff and the defendants (except for Pellant) "knew of and disregarded an excessive risk to inmate health and safety."

6

<u>Id</u>. at ¶ 25.

Portions of a January 2010 Legislative Post Audit report concerning staff sexual misconduct at TCF are included in plaintiff's amended complaint. The report appears to involve a study of staff sexual misconduct within the Kansas Department of Corrections, including TCF, from 2005 through 2009. The excerpts of the report copied in the first amended complaint discuss certain incidents and make various findings, including the following.

Problems were reported with the plumbing/maintenance program at TCF, including a 2007 incident of apparent voluntary sexual intercourse between a staff member and an inmate which was prosecuted and led to a criminal conviction of the staff member. There were no prior reports of undue familiarity made against the staff member, but there were other issues with the maintenance program of which the warden was aware, including:

> Although cameras were in the classrooms, instructors received sporadic supervision and no additional monitoring. When inmates and instructors were moving around the Facility, no one monitored which inmates were going with which staff person, where they were going, or how long they were gone. Additionally, some buildings where supplies were stored and work orders were being done didn't have cameras.

Doc. No. 7 at p. 8. Records showed that at least three male staff members associated with the maintenance program were investigated in the two years before the 2007 incident. One staff member was alone with an inmate in a locked room. The other two staff members were dismissed because of non-sexual infractions, although each

staff member had previously faced allegations of undue familiarity with inmates, and one staff member had three prior disciplinary actions for undue familiarity.  The report concluded that since the 2007 incident in the maintenance program, accountability for the maintenance staff "hadn't been established, and inmates and staff continued to move around the facility without appropriate supervision or accountability."  Id.

The report continued that since June 2007 TCF had installed 247 digital surveillance cameras in various locations around the facility and heavily restricted access to the building where the 2007 incident took place.  TCF also required staff to fill out a log when they transported inmates which listed the names of the inmates being transported, the mileage when they began, and the mileage when they returned.  Staff were also required to make radio contact and report the odometer readings when they leave and re-enter TCF.  The report noted that in spite of these measures "a staff member has admitted to a sexual relationship with an inmate in a parking lot within a mile of the facility.  As such, the policy on mileage readings only prevents misconduct where the employee has to drive a significant distance to find an isolated spot."  Id. at p. 9.  The report concluded that TCF had not taken appropriate steps to prohibit inmates from going with maintenance staff around TCF with little supervision, "although Department officials told us they are taking steps to address this issue," and

that the warden had identified one building without security or cameras that is still a possible site for misconduct. <u>Id</u>.

The report was critical that the 2007 incident did not trigger a "Serious Incident Review Board" under department policies, which have since changed. According to the report, TCF is the only prison facility in the Kansas system which houses female inmates and, therefore, it should more strictly enforce policies against undue familiarity and sexual misconduct. The report concluded that this was not the case.

The report noted that TCF has more allegations of sexual misconduct than other prison facilities in the state. Many of these allegations involve alleged inappropriate pat searches by male staff on female inmates. While a good number of the allegations are unverified, such allegations are difficult to verify. The report noted that TCF officials "have only recently required [pat searches] to be conducted in areas with good camera coverage." <u>Id</u>. at p. 11.

According to the report, the Kansas Corrections Department "reported 38 investigations of staff-on-inmate sexual violations between January and October 2009 for all facilities. Of those, 24 were unsubstantiated [that is, not proven true or false] with 12 of those unsubstantiated cases at Topeka Correctional Facility. Thirteen cases were unfounded [that is, proven to be false], and one case was substantiated [that is, proven to be true]. The

substantiated case was referred for prosecution but the prosecutor declined to file charges." Id.

The report continued:

> For cases that were substantiated, only 62% resulted in termination or resignation of the employee at Topeka Correctional Facility, compared with 80%-86% at El Dorado and Lansing. Cases that are substantiated often lead to employees being terminated or resigning. . . . [F]ar fewer substantiated cases ended in an employee's termination or resignation at Topeka Correctional Facility than at the two other facilities.
> More employees at Topeka Correctional Facility who were investigated for sexual misconduct, undue familiarity or contraband were investigated more than once. We analyzed the investigative data from 2005-2009 and focused on which staff member was subject to the investigation. . . . [M]ore than one-third of staff at Topeka Correctional Facility who were investigated for sexual misconduct, undue familiarity or trafficking in contraband were subsequently reinvestigated for one of those same issues, in that time period. This is likely due to the fact that fewer investigations at Topeka are substantiated, as mentioned above. Further, it's also related to the fact that even for the cases that are substantiated, fewer at the Topeka Facility end in employee termination or resignation than the other two facilities.
> The Topeka Correctional Facility was more inconsistent and lenient in response to incidents of staff misconduct - - especially in regard to cases of undue familiarity - - than the two other facilities.

Id. The report stated that officials remarked that the more significant incidents of staff misconduct have their roots in undue familiarity and, therefore, it is critical that incidents of undue familiarity be handled appropriately. "If employees see that staff members who are engaged in misconduct aren't appropriately disciplined, that can reduce the incentive to report employee misconduct." Id. at p. 12.

The report concluded that TCF had "failed to provide targeted training" for male staff working with female inmates. Id. It also criticized the Department of Corrections for failing to centralize investigative policy and reporting until 2009. The report further suggested that investigators needed specialized training and that department managers needed reports and statistical information which identified staff misconduct, allegations of misconduct, and investigations of alleged misconduct. The report suggested that a lack of good information prevented the authors from knowing the true extent of staff misconduct.

Near the end of the excerpts from the report reprinted in the complaint, it is suggested that a Corrections Department video shown to inmates regarding the Prison Rape Elimination Act of 2003 was not sufficient to address the problem of staff-on-inmate misconduct.

## II. RULE 12(b)(6) STANDARDS

To survive a motion to dismiss made pursuant to FED.R.CIV.P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555, 570 (2007). "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk,

L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Complaints which are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not satisfy this standard.  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

The court must first determine if the allegations in the complaint are factual and deserve an assumption of truth, or whether the allegations are merely legal conclusions that are not entitled to an assumption of truth.  Then the court must determine whether the factual allegations, assumed true, "plausibly give rise to an entitlement to relief."  Iqbal, 129 S.Ct. at 1950.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949.  The requirement of plausibility not only serves to weed out claims that lack a reasonable prospect of success, it also serves to inform defendants of the actual grounds of the claims against them.  Robbins, 519 F.3d at 1248.

"[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against

multiple defendants." Id. at 1249. "[I]t is particularly important [in § 1983 cases against a number of government actors sued in their individual capacities] that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Id. at 1250 (emphasis in original). In Robbins, the court criticized a complaint's use of either the collective term "defendants" or a list of defendants named individually "but with no distinction as to what acts are attributable to whom" noting that it was "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." Id. In another case, the Tenth Circuit stated that these same sentiments were applicable to an Eighth Amendment Bivens action. Smith v. U.S., 561 F.3d 1090, 1104 (10th Cir. 2009) cert. denied, 130 S.Ct. 1142 (2010).

III. PLEADING SUPERVISORY LIABILITY IN A § 1983 ACTION

Section 1983 is not a strict liability statute. Porro v. Barnes, 624 F.3d 1322, 1327 (10th Cir. 2010). Persons are liable under § 1983 if they subject or cause to be subjected a plaintiff "to a deprivation of his legal rights." Id. "'[A] defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.'" Id. (quoting Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006).

13

In <u>Iqbal</u>, the Supreme Court stated: "Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S.Ct. at 1948. A plaintiff must also plausibly plead the relevant state of mind required for the alleged constitutional violation. <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting <u>Iqbal</u>, 129 S.Ct. at 1949, "when a plaintiff sues an official under <u>Bivens</u> or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well").

The Tenth Circuit has commented in a § 1983 case that "[e]very governmental official in the chain of command is liable only for his own conduct" and while "[i]t may be tempting to name every individual in the chain of command," that is not sufficient to set out a triable claim. <u>Serna v. Colorado Dept. of Corrections</u>, 455 F.3d 1146, 1155 (10th Cir. 2006); see also, <u>Ajaj v. Federal Bureau of Prisons</u>, 2011 WL 902440 at *5 & *8 (D.Colo. 3/10/2010) (without an identification of the specific acts each defendant performed the court cannot draw a reasonable inference that each defendant is liable for the misconduct alleged); <u>Garcia v. Zavaras</u>, 2010 WL 4853553 at *2 (D.Colo. 11/19/2010) (suit with similar alleged facts

dismissed against executive director of the Colorado Department of Corrections when his alleged responsibility was based solely upon his position of oversight, approval of CDOC policies and failure to implement better policies to prevent alleged systemic problem of sexual misconduct by prison guards).

After _Iqbal_, the Tenth Circuit concluded in _Dodds_, 614 F.3d at 1199-1200, that a plaintiff may establish a § 1983 claim against a defendant-supervisor by showing:  1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; 2) the policy caused the complained of constitutional harm; and 3) the defendant acted with the state of mind required to establish the alleged underlying constitutional deprivation.  However, the Tenth Circuit did not hold that this was the only way such a claim could be established.

"A plaintiff could establish the defendant-supervisor's personal involvement by demonstrating his personal participation, his exercise of control or direction, or his failure to supervise, or his knowledge of the violation and acquiescence in its continuance."  _Dodds_, 614 F.3d at 1195 (interior citations and quotations omitted).

IV.  RULINGS UPON DEFENDANTS' ARGUMENTS FOR DISMISSAL UNDER RULE 12(b)(6)

One of the primary faults in plaintiff's first amended complaint is that, contrary to the directions of the Tenth Circuit in _Robbins_, _Smith_ and _Serna_, the complaint uses either the

collective term "defendants" or a list of defendants named individually but with no distinction as to what acts are attributable to whom. So, it is impossible for any of these individuals or the court to ascertain what particular unconstitutional acts they are alleged to have committed and with what state of mind. Because of this problem, the court cannot and shall not address all of defendants' arguments for dismissal. However, the court shall make the following rulings.

A. <u>Plaintiff's Fourth Amendment claims shall be dismissed as to all defendants</u>

The Fourth Amendment to the Constitution states in part that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S.CONST. Amend. IV. Defendants argue that the first amended complaint does not specify what Fourth Amendment claim may exist. Plaintiff does not directly respond to this contention.

The amended complaint does not explicitly allege that plaintiff was harmed because of an illegal search or seizure. Nor has plaintiff described such a claim in her response to defendants' motion. In a recent case, the Tenth Circuit commented that the Fourth Amendment "pertains to the events leading up to and including an arrest of a citizen previously at liberty. . ." <u>Porro</u>, 624 F.3d at 1325. Plaintiff was not at liberty during the relevant events in this case. In sum, because a Fourth Amendment

claim does not appear to be supported by the language of the Fourth Amendment, case law, or plaintiff's allegations and argumentation, the court shall dismiss any claim plaintiff is making under the Fourth Amendment.

B. **As to the supervisory defendants, plaintiff's Eighth Amendment claims shall be dismissed unless amended; the Eighth Amendment claim may proceed as to defendant Van Dyke**

Under the Eighth Amendment, plaintiff was entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)). There are two components to an Eighth Amendment claim. "To establish a cognizable Eighth Amendment claim for failure to protect, [] plaintiff 'must show that [s]he [was] incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to [her] safety, the subjective component." <u>Verdicia v. Adams</u>, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting <u>Benefield v. McDowall</u>, 241 F.3d 1267, 1271 (10th Cir. 2001)). Both components must be satisfied. <u>Callahan v. Poppell</u>, 471 F.3d 1155, 1159 (10th Cir. 2006).

Sexual abuse inflicted by state actors against prison inmates has been found to be a violation of the Eighth Amendment. <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1111 (11th Cir. 2006) <u>cert. denied</u>, 549 U.S. 1323 (2007)(severe or repeated sexual abuse of a prisoner by

17

a prison official can violate the Eighth Amendment); <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1197 (9th Cir. 2000) (sexual assault on an inmate by a guard is an Eighth Amendment violation); <u>Smith v. Cochran</u>, 339 F.3d 1205, 1215 (10th Cir. 2003) (alleged rape of inmate on work release alleges a violation of the Eighth Amendment); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1310 (10th Cir. 1998) (inmates sexually assaulted by jailer may bring an Eighth Amendment claim); <u>Berry v. Oswalt</u>, 143 F.3d 1127, 1132 (8th Cir. 1998) (rape by a correctional officer can be an Eighth Amendment injury). Plaintiff has pleaded facts which satisfy the objective component of an Eighth Amendment claim.

To satisfactorily plead the subjective component - deliberate indifference - plaintiff must allege that defendants knew she "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measure to abate it." <u>Callahan v. Poppell</u>, 471 F.3d at 1159 (interior quotation omitted). This is a higher standard than simple negligence or heightened negligence. <u>Board of County Commissioners v. Brown</u>, 520 U.S. 397, 407-10 (1997). It has been analogized to criminal recklessness, which makes a person liable when he or she consciously disregards a substantial risk of serious harm." <u>Mata v. Saiz</u>, 427 F.3d 745, 752 (10th Cir. 2005) (referring to <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-38 (1994)). It is not enough to allege that prison officials failed "to alleviate a significant risk that [they] should have

a prison official can violate the Eighth Amendment); <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1197 (9th Cir. 2000) (sexual assault on an inmate by a guard is an Eighth Amendment violation); <u>Smith v. Cochran</u>, 339 F.3d 1205, 1215 (10th Cir. 2003) (alleged rape of inmate on work release alleges a violation of the Eighth Amendment); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1310 (10th Cir. 1998) (inmates sexually assaulted by jailer may bring an Eighth Amendment claim); <u>Berry v. Oswalt</u>, 143 F.3d 1127, 1132 (8th Cir. 1998) (rape by a correctional officer can be an Eighth Amendment injury). Plaintiff has pleaded facts which satisfy the objective component of an Eighth Amendment claim.

To satisfactorily plead the subjective component - deliberate indifference - plaintiff must allege that defendants knew she "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measure to abate it." <u>Callahan v. Poppell</u>, 471 F.3d at 1159 (interior quotation omitted). This is a higher standard than simple negligence or heightened negligence. <u>Board of County Commissioners v. Brown</u>, 520 U.S. 397, 407-10 (1997). It has been analogized to criminal recklessness, which makes a person liable when he or she consciously disregards a substantial risk of serious harm." <u>Mata v. Saiz</u>, 427 F.3d 745, 752 (10th Cir. 2005) (referring to <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-38 (1994)). It is not enough to allege that prison officials failed "to alleviate a significant risk that [they] should have

perceived but did not." <u>Farmer</u>, 511 U.S. at 838. Actual knowledge of a substantial risk to plaintiff must be alleged, although such knowledge may be inferred from circumstantial evidence or simply because the risk was obvious. <u>Farmer</u>, 511 U.S. at 842. "Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights. <u>Verdecia</u>, 327 F.3d at 1175-76 (interior quotation omitted).

Plaintiff's failure to adequately plead the individual actions and state of mind of each supervisory defendant makes it impossible for this court to determine whether plaintiff can plausibly prove an Eighth Amendment violation by each defendant and fails to give the supervisory defendants adequate notice of plaintiff's claims. Accordingly, the court shall dismiss the Eighth Amendment claims against each supervisory defendant unless plaintiff files an amended complaint within 25 days of the date of this order. See <u>Neitzke v. Williams</u>, 490 U.S. 319, 329 (1989) (under Rule 12(b)(6) a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss and an opportunity to amend the complaint before the motion is ruled upon); <u>Reynoldson v. Shillinger</u>, 907 F.2d 124, 126-27 (10th Cir. 1990) (leave to amend granted to correct potentially curable defects in pleading). If

plaintiff files an amended complaint, defendants may again wish to file a motion to dismiss.

C. Plaintiff's Fourteenth Amendment claims shall be dismissed as to all defendants

In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court stated that federal courts should analyze constitutional claims using an "explicit textual source of constitutional protection," rather than using "the more generalized notion of 'substantive due process'" under the Fourteenth Amendment. Likewise, in Porra, the Tenth Circuit suggested that the Fourteenth Amendment should be considered in situations in which neither the Fourth Amendment nor the Eighth Amendment are applicable. 624 F.3d at 1326; see also, Bromell v. Idaho Dept. Of Corrections, 2006 WL 3197157 at *5 (D.Idaho 1/31/06). Here, the Eighth Amendment applies to plaintiff's situation. Therefore, the court will dismiss any claim plaintiff may be making on the basis of the Fourteenth Amendment, except to the extent that the Fourteenth Amendment applies the protections of the Eighth Amendment against the states. Robinson v. California, 370 U.S. 660, 666 (1962) (suggesting incorporation of the Eighth Amendment by the Fourteenth Amendment).

V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants ask for summary judgment against plaintiff's claims for prospective relief on the grounds that plaintiff was released on parole as of November 10, 2008 and, therefore, she cannot

demonstrate a good likelihood that she may be injured by the conditions which exist at TCF.

Summary judgment is proper if the moving party establishes that "there is no genuine issue as to any material fact" and if the moving party is entitled to have all or part of a claim decided in his favor as a matter of law. FED.R.CIV.P. 56(a)(b) and (c)(2). A "genuine" issue of fact is one for which the evidence "allows a reasonable jury to resolve the issue either way." Haynes v. Level 3 Comm., LLC, 456 F.3d 1215, 1219 (10th Cir. 2006) cert. denied, 549 U.S. 1252 (2007). A "material" fact is one which "is essential to the proper disposition of the claim." Id. The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. LifeWise Master Funding v. Telebank, 374 F.3d 917, 927 (10th Cir. 2004) (quoting N.Tex. Prod.Credit Ass'n v. McCurtain County Nat'l Bank, 222 F.3d 800, 806 (10th Cir. 2000)).

Plaintiff does not dispute that she has been released on parole. However, she claims that there is a sufficient likelihood that she could return to TCF to permit her claims for prospective relief to continue. Plaintiff makes this argument on the grounds that plaintiff is subject to the authority of the Kansas Department of Corrections until December 14, 2011.

Plaintiff's argument is contrary to the holding of several Tenth Circuit cases involving similar facts. See Wardell v.

21

Duncan, 470 F.3d 954, 957 n.1 (10th Cir. 2006) (paroled inmate may not bring claims for injunctive relief involving receipt of mail within a prison); Franklin v. Kansas Department of Corrections, 160 Fed.Appx. 730, 734 (10th Cir. 12/23/05) cert. denied, 549 U.S. 1219 (2007) (inmate transferred from prisons where he was injured or denied medical care cannot bring injunctive relief claims involving those institutions); Beierle v. Colorado Department of Corrections, 79 Fed.Appx. 373, 375 (10th Cir. 10/22/03) (inmate cannot bring claims for injunctive relief with regard to an institution where he is no longer incarcerated); McAlpine v. Thompson, 187 F.3d 1213, 1217 (10th Cir. 1999) (former inmate on supervised release may not bring claim for injunctive relief regardless of hypothetical possibility that a violation of supervised release could return the inmate to prison); see also, Marrie v. Nickels, 70 F.Supp.2d 1252, 1259 (D.Kan. 1999) (citing cases from other circuits).

Therefore, the court shall dismiss as moot plaintiff's claims for prospective relief.

VI. CONCLUSION

In conclusion, the court shall dismiss plaintiff's claims of violations of the Fourth and Fourteenth Amendments consistent with this memorandum and opinion. The court shall also dismiss plaintiff's claims for prospective relief which further means that defendant Pellant shall be dismissed from this action. Plaintiff is granted 25 days to file an amended complaint. If no amended

complaint is filed, the court shall dismiss plaintiff's Eighth Amendment claims against defendants Werholtz, Koerner, Cummings, Essman, Robertson, Shoulders, Johnstone, Plummer and Roberts. Plaintiff's Eighth Amendment claims against defendant Van Dyke shall continue whether or not plaintiff files an amended complaint.

**IT IS SO ORDERED.**

Dated this 20th day of April, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge
