**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

REBECCA FLEETWOOD,

        Plaintiff,

   vs.                         **Case No. 10-2480-RDR**

ROGER WERHOLTZ, Secretary
of Corrections, et al.,

        Defendants.

_____

<u>**MEMORANDUM AND ORDER**</u>

    This action is brought under 42 U.S.C. § 1983 for an alleged violation of plaintiff's Eighth Amendment rights while she was an inmate at the Topeka Correctional Facility (TCF).  Specifically, plaintiff claims that she was forced to submit to the sexual advances of a correctional officer.  This case is currently proceeding pursuant to a second amended complaint which names the following defendants:  Roger Werholtz; Richard D. Koerner; William L. Cummings; Major Joseph P. Essman; Capt. Mark Robertson; and Nathan VanDyke.

    This case is before the court upon the motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) and for summary judgment filed on behalf of all the defendants except defendant VanDyke.  Although the motion indicates that summary judgment is part of the relief requested, the motion reads to the court like a straight motion under Rule 12(b)(6).  Any facts outside of the second amended complaint do not appear relevant to the arguments in the motion.

Therefore, the court shall treat the motion as a motion to dismiss.

The defendants asking for dismissal were in a supervisory position in relation to defendant VanDyke and other personnel at TCF at the time of the alleged constitutional violation. For the purposes of this order, these defendants may be referred to at times as the "supervisor defendants."

I.  THE SECOND AMENDED COMPLAINT

The second amended complaint alleges that one early morning in September 2008 while plaintiff was waiting to catch a bus to a worksite off the grounds of TCF, defendant VanDyke, who was a correctional officer at TCF, offered to give plaintiff a ride. Plaintiff accepted the offer. During the trip, plaintiff alleges that defendant VanDyke unzipped his pants, made sexually provocative comments and grabbed plaintiff's breasts. According to the complaint, when plaintiff got off work in the afternoon, defendant VanDyke picked her up to return plaintiff to TCF. It is alleged that before driving to TCF, VanDyke pulled the vehicle into a cemetery across from the worksite and told plaintiff he wanted her to perform oral sex on him. Plaintiff alleges she felt she "could have severe problems if she did not do what defendant VanDyke wanted." Doc. No. 16 at ¶ 18. So she engaged in sexual contact which was "unwanted, unwelcome, and forced upon her." Id.

At this time, defendant Werholtz was the Secretary of Corrections for the State of Kansas; defendant Koerner was the

warden at TCF; defendant Cummings was the deputy warden at TCF; defendant Essman was a shift supervisor at TCF, and defendant Robertson was a captain in the supervisory hierarchy.  The complaint alleges that each supervisor defendant was:

> involved in the management of the staff and the inmates, particularly the drafting, revision, approval, issuance and enforcement of policies, procedures, rules, guidelines, practices and customs.  This included responsibility for the hiring, firing, discipline, training and supervision of corrections officers and other staff.

Id. at ¶ 20.  The complaint further alleges that the supervisor defendants were aware that plaintiff was incarcerated under conditions posing a substantial risk of serious harm and, nevertheless, were deliberately indifferent to that risk.  Id. at ¶ 22.  The complaint claims that the supervisor defendants "promulgated, created, implemented and/or were otherwise responsible for the continued operation of a policy/custom/ practice/culture of sexual misconduct which caused the alleged violation of plaintiff's Eighth Amendment rights."  Id. at ¶ 23. It also alleges that they were aware that female inmates faced a substantial risk of harm but disregarded that risk by failing to take reasonable measures to abate it.  Id. at ¶ 24.

The second amended complaint alleges that defendant Van Dyke regularly bragged about his sexual conduct with inmates, officers and nurses and that he fathered a child with an inmate.  Id. at ¶ 25(e).  It further alleges that defendant VanDyke was named as a

defendant in another lawsuit arising from an incident in which VanDyke and a team of male correctional officers cut the clothes off of an inmate.[1] <u>Id</u>. at ¶ 25(f). Defendant Essman is alleged to have been present during that incident. <u>Id</u>. at ¶ 25(n). An affidavit filed in that case asserted in 2006 that defendant VanDyke engaged in inappropriate pat-down searches. <u>Id</u>. at ¶ 25(j). The plaintiff in that lawsuit also alleged that defendant VanDyke had been engaged in prior incidents of inappropriate sexual behavior. The second amended complaint further refers to two criminal charges against defendant VanDyke for unlawful sexual relations with an inmate and notes that defendant VanDyke eventually pleaded guilty. <u>Id</u>. at ¶¶ 25(x), (y) and (z).

Plaintiff claims that there were 39 reports of sexual misconduct by TCF staff between 2005 and 2008 and that an inmate stated that dozens of prisoners had sex with staff members at TCF between 1998 and 2008. <u>Id</u>. at ¶¶ 25(k) and (u). Plaintiff asserts that discipline for such misconduct was inconsistent and often too lenient. Consequently, according to plaintiff, defendants were delinquent in addressing problems of undue familiarity between corrections officers and female inmates and the resultant risk of harm to the female inmates. <u>Id</u>. at ¶ 26(g). Plaintiff also contends in the second amended complaint that defendant Robertson

---

[1] Defendants prevailed in this lawsuit. <u>Graham v. VanDycke</u>, 564 F.Supp.2d 1305 (D.Kan. 2008) <u>aff'd</u>, 318 Fed.Appx. 654 (10th Cir. 3/26/2009).

engaged in such misconduct and benefitted from lenient disciplinary actions.  Id. at ¶ 26(n).

The complaint describes an incident in which a correctional officer in the maintenance program at TCF impregnated an inmate and quotes the conclusion of a January 2010 Legislative Post Audit report that "information we reviewed . . . showed that conditions were ripe for staff misconduct to have occurred in this Program without being detected and no action had been taken to address those conditions."  Id. at p. 23.

Plaintiff alleges that the supervisory defendants "personally participated in and/or acquiesced in the [violation of plaintiff's Eighth Amendment rights] and/or demonstrated deliberate indifference in their exercise of responsibilities for hiring, firing, discipline, training and supervision."  Id. at ¶ 30. Plaintiff further alleges that the supervisory defendants approved or ratified a culture of sexual misconduct and that their actions or omissions demonstrated deliberate indifference to plaintiff's safety and welfare.  Id. at ¶¶ 31-32.  In addition, plaintiff contends that the supervisory defendants "are also liable to plaintiff because of their reckless supervision of . . . defendant VanDyke . . ."  Id. at ¶ 34(g).

II.  RULE 12(b)(6) STANDARDS

The court shall repeat a prior discussion of these standards which was set forth in another order in this case.  See Doc. No. 15

5

at pp. 11-13.

        To survive a motion to dismiss made pursuant to FED.R.CIV.P.
12(b)(6), a complaint must present factual allegations, assumed to
be true, that "raise a right to relief above the speculative level"
and must contain "enough facts to state a claim to relief that is
plausible on its face." <u>Bell Atlantic Corporation v. Twombly</u>, 550
U.S. 544, 555, 570 (2007).  "[T]he complaint must give the court
reason to believe that <u>this</u> plaintiff has a reasonable likelihood
of mustering factual support for <u>these</u> claims." <u>Ridge at Red Hawk,</u>
<u>L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis
in the original).  The plausibility standard does not require a
showing of probability that "a defendant has acted unlawfully," but
requires more than "a sheer possibility." <u>Ashcroft v. Iqbal</u>, 129
S.Ct. 1937, 1949 (2009).  Complaints which are no more than "labels
and conclusions" or "a formulaic recitation of the elements of a
cause of action" do not satisfy this standard.  <u>Robbins v.</u>
<u>Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir. 2008).

        The court must first determine if the allegations in the
complaint are factual and deserve an assumption of truth, or
whether the allegations are merely legal conclusions that are not
entitled to an assumption of truth.  Then the court must determine
whether the factual allegations, assumed true, "plausibly give rise
to an entitlement to relief." <u>Iqbal</u>, 129 S.Ct. at 1950.  "A claim
has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. The requirement of plausibility not only serves to weed out claims that lack a reasonable prospect of success, it also serves to inform defendants of the actual grounds of the claims against them. Robbins, 519 F.3d at 1248.

"[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." Id. at 1249. "[I]t is particularly important [in § 1983 cases against a number of government actors sued in their individual capacities] that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Id. at 1250 (emphasis in original). In Robbins, the court criticized a complaint's use of either the collective term "defendants" or a list of defendants named individually "but with no distinction as to what acts are attributable to whom" noting that it was "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." Id. In another case, the Tenth Circuit stated that these same sentiments were applicable to an Eighth Amendment Bivens action. Smith v. U.S., 561 F.3d 1090, 1104 (10th Cir. 2009) cert.

7

denied, 130 S.Ct. 1142 (2010).

III.   PLEADING SUPERVISORY LIABILITY IN A § 1983 ACTION

As this court stated in a previous order, § 1983 is not a strict liability statute.  Porro v. Barnes, 624 F.3d 1322, 1327 (10th Cir. 2010).  Persons are liable under § 1983 if they subject or cause to be subjected a plaintiff "to a deprivation of his legal rights."  Id.  "'[A] defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.'"  Id. (quoting Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006).

As regards the supervisor defendants who have filed the instant motion to dismiss, plaintiff must adequately allege that a subordinate violated plaintiff's constitutional rights.  Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010) cert. denied, 131 S.Ct. 2150 (2011).   The adequacy of this allegation is not disputed.

Plaintiff must also describe an affirmative link between the supervisor defendant and the alleged constitutional violation.  Id. This affirmative link is properly alleged by claiming:  a) personal involvement in the violation; b) a sufficient causal connection between the supervisor's involvement and the constitutional violation; and c) a culpable state of mind.  Id.  "Personal involvement" can be alleged by stating that:  1) the supervisor personally participated in the alleged violation; 2) the supervisor

8

exercised control or direction over the alleged illegal acts, or his failure to supervise caused the alleged illegal acts; 3) the supervisor knew of the violation and acquiesced in its continuance; or 4) the supervisor promulgated, created, implemented or utilized a policy that caused the alleged deprivation of constitutional rights. Id.

A "causal connection" is alleged by claiming that a supervisor defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of her constitutional rights. Id. at 1195-96.

Finally, a "culpable state of mind" is alleged by stating that the supervisor defendant acted knowingly or with deliberate indifference that a constitutional violation would occur. Id. at 1196. "Deliberate indifference" is the required state of mind for an Eighth Amendment violation. Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). To be deliberately indifferent, an official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "The official's knowledge of the risk need not be knowledge of a substantial risk to a particular inmate, or knowledge of the particular manner in which the injury might occur." Tafoya, 516 F.3d at 916. "'It does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether

a prisoner faces an excessive risk of assault for reasons personal to him or because all prisoners in his situation face such a risk.'" Id. (quoting Gonzales v. Martinez, 403 F.3d 1179, 1187 (10th Cir. 2005)).  In addition, the official must be aware of and fail to take reasonable steps to alleviate that risk.  Id.  Actual knowledge of a substantial risk of serious harm to a prisoner may be based solely on circumstantial evidence, such as the obviousness of the condition.  Id.  But, a "defendant may present evidence to show that he was in fact unaware of the risk, in spite of the obviousness." Id. at 917.

The Tenth Circuit has noted that the requirements for alleging and proving the liability of a supervisor for a § 1983 violation are "not necessarily distinct" and that proof of one requirement may often suffice to demonstrate another requirement.  Dodds, 614 F.3d at 1196.

IV.  DEFENDANTS' MOTION TO DISMISS

Defendants argue that there is no allegation in the second amended complaint concerning what the supervisor defendants actually did, only conclusory allegations, such as allowing a culture of sexual misconduct.  Doc. No. 18 at p. 10.  The supervisor defendants contend that there is no allegation that the supervisor defendants ignored an officer's known history of sexual contact with prisoners.  Id.  The supervisor defendants further argue that the second amended complaint lacks a plausible

allegation that the supervisor defendants knew of any risk of harm to plaintiff which they then ignored. Id. at pp. 9-10. Finally, the supervisor defendants contend that plaintiff's claims that defendants failed to properly discipline staff for undue familiarity or for failing to monitor the movement of staff and inmates, are not specific to any defendant and are not specific to the alleged incident between plaintiff and defendant VanDyke. Therefore, they argue that there is no sufficient affirmative link alleged between that incident and the supervisor defendants. Id. at p. 11.

As previously stated, the court's role is to examine the factual allegations in the complaint (as opposed to the legal conclusions) and determine whether they plausibly could lead to an entitlement to relief. It is undisputed that plaintiff has alleged a constitutional violation committed by defendant VanDyke who was a subordinate to the supervisor defendants. The question is whether plaintiff has plausibly alleged an affirmative link between the alleged actions or omissions of the supervisor defendants and the alleged constitutional violation.

As the court has stated, an affirmative link has three elements: personal involvement; a causal connection; and a culpable state of mind. Personal involvement can be alleged by claiming that a supervisor's failure to exercise control or direction caused the alleged illegal acts or that the supervisor

11

promulgated, created, implemented or utilized a policy that caused the alleged deprivation of constitutional rights.

There are allegations in the second amended complaint that defendant VanDyke boasted to others about his sexual contacts with inmates and others at TCF. There is also an allegation of one inmate complaint and an affidavit alleging improper sexual contact by defendant VanDyke. It is plausible that plaintiff could prove that these boasts and the written complaints and affidavits were known to the supervisor defendants. There are allegations in the second amended complaint that defendant VanDyke and other TCF officers engaged in a seemingly large amount of improper sexual activity of various kinds, from "undue familiarity" to sexual intercourse. The second amended complaint alleges that the supervisor defendants reacted mildly and inconsistently to reports of such activity and thus fostered a culture of sexual misconduct. While a claim that defendants "personally participated in the allowance of a culture of sexual misconduct" is a broad allegation, it is a broad factual allegation, not a legal conclusion. Thus, the court is obliged to consider whether it is a plausible allegation which may demonstrate the supervisor defendants' personal involvement (via a failure to supervise) in the alleged deprivation of constitutional rights. After considering the mass of factual allegations contained in the lengthy second amended complaint, the court does not believe that this claim is

12

implausible.

It is plausible to think plaintiff may be able to establish that the alleged failure to supervise defendant VanDyke and others set into motion a series of events which a reasonable supervisor should have known would lead to the alleged constitutional violation.  It is also plausible to think that the failure to react to the alleged incidents of sexual misconduct by officers at TCF is evidence that the supervisor defendants were aware of and failed to take reasonable steps to alleviate a substantial risk of harm to female inmates who might come into contact with defendant VanDyke or other officers at TCF.

The court rejects the argument that plaintiff does not allege how any of the supervisor defendants knew of the risk of harm to her.  The second amended complaint contains numerous allegations of:  1) supervisory authority over defendant VanDyke and TCF; 2) widespread problems of sexual misconduct by defendant VanDyke and other officers at TCF; and 3) other complaints and claims regarding VanDyke and TCF.  This is sufficient to make a plausible claim that each of the supervisor defendants was aware of a substantial risk of harm.

Finally, the court also rejects the argument that plaintiff's allegations are too general to properly allege an affirmative link between a specific supervisor defendant to the sexual contact between plaintiff and defendant VanDyke.  As the court has already

noted, in <u>Tafoya</u> the Tenth Circuit stated that an official's knowledge of the risk need not be knowledge of a substantial risk to a <u>particular</u> inmate, or knowledge of the particular manner in which the injury might occur.  Furthermore, there are specific allegations regarding defendant VanDyke which plaintiff may prove were known to the supervisor defendants.  The court has examined the alleged analogous cases cited by defendants to support their argument that plaintiff's allegations are too general or collective.  See <u>Hovater v. Robinson</u>, 1 F.3d 1063 (10th Cir. 1993) and <u>Grayson v. Kansas</u>, 2007 WL 1259990 (D.Kan. 4/30/2007).  In the court's judgment, the second amended complaint in this case is more specific and provides more plausible allegations of an affirmative link to a constitutional violation than the complaints described in those cases.

V.  CONCLUSION

    For the above-stated reasons, defendants' motion to dismiss and for summary judgment shall be denied.

    **IT IS SO ORDERED.**

    Dated this 19th day of July, 2011 at Topeka, Kansas.

                    s/Richard D. Rogers
                    United States District Judge

14